**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**DONALD HENSLEY, JR. (#112218)**                    **CIVIL ACTION**

**VERSUS**

**BURL CAIN, ET AL.**                                **NO. 11-0094-JJB-DLD**

## NOTICE

      Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

      In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

      ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

      Signed in Baton Rouge, Louisiana, on August 6, 2012.

 

_____

**MAGISTRATE JUDGE DOCIA L. DALBY**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**DONALD HENSLEY, JR. (#112218)**                    **CIVIL ACTION**

**VERSUS**

**BURL CAIN, ET AL.**                                                **NO. 11-0094-JJB-DLD**

<u>**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**</u>

This matter comes before the Court on the parties' cross-motions for summary judgment, rec.doc.nos. 59 and 83.[1]

The pro se plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, brought this action pursuant to 42 U.S.C. § 1983 against Warden Burl Cain and unidentified medical and food service personnel at the prison, complaining that the defendants violated his constitutional rights on November 26, 2009, by serving him food which was spoiled or contaminated and by thereafter failing to attend to his serious medical needs. The plaintiff thereafter amended his Complaint to add as defendants herein Lt Joseph Landry, Capt. Perry Dixon, Dietician Dunbar, Medical Technician McCoy and Dr. Jonathan Roundtree, <u>see</u> rec.doc.no. 37. Pursuant to earlier Magistrate Judge's Report in this case, approved by the District Judge on November 1, 2011, <u>see</u> rec.doc.nos. 34 and 38, the plaintiff's claims asserted against defendant Burl Cain have been dismissed. In addition, pursuant to Order dated January 26, 2012, the Court has granted the plaintiff's motion to voluntarily dismiss his claims asserted against defendants Dunbar and McCoy, <u>see</u> rec.doc.nos. 60 and 61.

The plaintiff now moves for summary judgment relying upon the pleadings, a Statement of

---

[1]        Pursuant to Order dated June 28, 2012, rec.doc.no. 93, the Court converted the defendants' pending Motion to Dismiss, which was brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to a motion for summary judgment brought pursuant to Rule 56 thereof.

Undisputed Facts, excerpts from his administrative remedy proceedings, an excerpt from his medical records, a copy of correspondence dated November 29, 2009, from the plaintiff to defendant Jonathan Roundtree, a copy of correspondence dated December 1, 2009, from the plaintiff to Warden Burl Cain, an LSP Investigative Services Report dated January 28, 2010,[2] relative to the incident of alleged food poisoning on November 26, 2009, several Unusual Occurrence Reports dated November 27, 2009, relative to same, an Investigative Report prepared by the Infectious Disease Epidemiology Section of the Louisiana Office of Public Health relative to same, several sworn statements prepared by co-inmates relative to same, a sworn statement prepared by the plaintiff relative to same, D.O.C. Regulation C-06-001 (relative to "Culinary Food Services"), LSP Directive No. 11.003 (relative to "Food Service"), documentation pertaining to two other alleged incidents of food-poisoning at LSP, in November, 2008, and June, 2011, and documentation relative to settlements entered into by prison officials with regard to those two incidents.

The defendants move for summary judgment relying upon the pleadings, a Statement of Undisputed Facts, a Request for Medical Treatment prepared by the plaintiff on November 27, 2009, several Warden's Unusual Occurrence Reports dated November 27, 2009, an LSP Investigative Services Report dated January 28, 2010, relative to the incident of alleged food poisoning on November 26, 2009, an Investigative Report prepared by the Infectious Disease Epidemiology Section of the Louisiana Office of Public Health relative to same, D.O.C. Health Care Policy No. HC-18 (relative to "Dietary Service"), and responses to discovery prepared by defendants Roundtree, Dixon and Landry.

Summary judgment is appropriate where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil

---

[2]     The referenced Investigative Report is in fact dated January 28, 2009, but this is an obvious typographical error, and the Court will treat the Report has having been issued on January 28, 2010.

Procedure.  Celotex Corporation v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.  Anderson, supra.  This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.  Little v. Liquid Air Corp., 37 F.3d 1069 (5th Cir. 1994).  Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  Celotex, supra.  Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party.  Little, supra, 37 F.3d at 1076.  In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.  International Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257 (5th Cir. 1994), cert. denied, 502 U.S. 1059, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992).

In his Complaint, as amended, the plaintiff alleges that on November 26, 2009, Thanksgiving Day, he was served contaminated food, resulting in his allegedly sustaining complaints of severe gastrointestinal pain and nausea.  He asserts that prison officials failed to prepare the food in accordance with standards promulgated by the American Correctional Association ("ACA"), failed to comply with state and prison regulations relative to same, and/or failed to take precautions to keep the food fresh or free from contamination.  He further asserts that this is not the first time that inmates have been served bad food at the prison and that this fact establishes a pattern of deliberate indifference on the part of prison officials in failing to prevent a recurrence of such events.  Finally, he asserts that prison officials failed to take appropriate action to address his

medical complaints after he reported that he was suffering the effects of food poisoning. Specifically, he asserts that he was seen only by a medical technician on November 27, 2009, who only provided the plaintiff with a "pink liquid" which the technician advised would "soothe" the plaintiff's stomach. The plaintiff complains that although the medical technician advised that the plaintiff would be seen by a physician, the referenced appointment with a physician never took place.

Initially, it appears from the plaintiff's Complaint that he has sued the defendants in both their individual and their official capacities. Notwithstanding, § 1983 does not provide a federal forum for a litigant who seeks monetary recovery against a state official acting in an official capacity. In Hafer v. Melo, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity claims and made clear that a claim against a state official in his official capacity for monetary damages is treated as a claim against the State and is therefore barred by the Eleventh Amendment. Id. Notwithstanding, the plaintiff's claim for monetary damages asserted against the defendants in the defendants' individual capacity remains viable, id., and the plaintiff's claim for injunctive relief asserted against the defendants in the defendants' official capacity is also allowed to proceed because a state official, when sued for injunctive relief in his official capacity, is not a prohibited defendant because official capacity claims for prospective injunctive relief are not treated as claims against the State. Will v. Michigan Department of State Police, supra. See also 15 Am.Jur.2d Civil Rights § 101.

Turning to the plaintiff's claims asserted against the defendants in their individual capacities, the defendants contend that they are entitled to qualified immunity. Specifically, the defendants contend that the plaintiff has failed to make a sufficient showing of conduct on their part which rises to the level of a violation of the plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. Hale v. Townley, 45

F.3d 914 (5th Cir. 1995). As enunciated in <u>Saucier v. Katz</u>, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendants' conduct violated the plaintiff's constitutional rights. Second, the district court looks to whether the rights allegedly violated were clearly established at the time of the violation. This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful <u>in the situation which he confronted</u>. <u>Id.</u>[3]

Undertaking the <u>Saucier</u> analysis, the Court concludes that the defendants' motion is well-taken and that the plaintiff's allegations fail to overcome the assertion of qualified immunity.

First, in order for an inmate-plaintiff to recover under the Eighth Amendment, the law is clear that there must be a showing by the plaintiff that a defendant has explicitly recognized and disregarded a serious risk of harm to the inmate's health or safety. The Supreme Court has adopted "subjective recklessness as used in the criminal law" as the appropriate standard to apply in cases of "deliberate indifference" under the Eighth Amendment. <u>Farmer v. Brennan</u>, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). In other words, "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Id</u>. Whether a claim made by an inmate is characterized as exposure to inhumane conditions of confinement, a failure to attend to medical needs, or a combination of both, it is appropriate to apply

---

2. The United States Supreme Court has recently held that rigid chronological adherence to the <u>Saucier</u> two-step methodology is no longer mandatory. <u>Pearson v. Callahan</u>, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Although the <u>Saucier</u> methodology will be "often beneficial", the <u>Callahan</u> Court leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis.

the "deliberate indifference" standard. <u>Wilson v. Seiter</u>, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred from the obviousness of the substantial risk, <u>Farmer v. Brennan</u>, <u>supra</u>,

Applying this standard to the plaintiff's claim of food-poisoning in the instant case fails to result in a conclusion or in any reasonable inference that defendants Joseph Landry and Perry Dixon, or any other defendant, recognized and disregarded an excessive risk of harm to the plaintiff's health or safety on November 26, 2009. First, the plaintiff has not refuted the assertion of defendant Landry, in the defendant's Response to the plaintiff's Interrogatories, that the defendant was not even present at LSP on the referenced date. <u>See</u> rec.doc.no. 76 (with attached time sheet reflecting no hours worked by defendant Landry on November 25 and 26, 2009). Thus, it does not appear that defendant Landry can have any potential liability in connection with the events complained of. Further, the sum total of the plaintiff's evidentiary showing appears to consist principally of documents tending to reflect that the incident of alleged food poisoning on November 26, 2009, actually occurred, and that hundreds of inmates complained of symptoms resulting from eating the food served on that date. The plaintiff does not allege, however, that the referenced food was obviously spoiled, that it had a bad taste, smell or appearance, or that it was otherwise unsafe in any perceptible way. Thus, the basis for the plaintiff's claim appears to consist primarily of his mere personal belief that the defendants were deliberately indifferent to his health or safety in preparing and/or serving the referenced food. This is not sufficient to establish a claim of deliberate indifference or to defeat the defendants' motion for summary judgment. Although the plaintiff may in fact have been exposed to contaminated food on November 26, 2009, this alone does not establish that the defendants, by their actions, were deliberately indifferent to the plaintiff's health or safety or intended to cause him and other inmates harm. Nor does the fact that other isolated incidents of allegedly tainted food may have occurred at LSP, specifically in November, 2008, and June, 2011, establish a pattern of misbehavior or wrongdoing on the part of the defendants. To the contrary, these other incidents, separated by substantial periods of time,

establish neither a pattern of wrongdoing nor any deficient policy relative to food preparation at the prison. This is particularly true in light of the fact that LSP officials serve three meals a day to over 5,000 inmates without regular incident. Nor does the plaintiff's reference to any alleged violations of LSP regulations or ACA standards result in a different conclusion. To the contrary, the law is clear in this regard that the mere violation of a state statute or regulation is not actionable under § 1983. See Jackson v. Cain, 864 F.2d 1235 (5th Cir. 1989). See also Woodard v. Andrus, 419 F.3d 348 (5th Cir. 2005) ("[A] violation of a state statute alone is not cognizable under § 1983 because § 1983 is only a remedy for violations of federal statutory and constitutional rights"). Accordingly, in the absence of any showing of actual knowledge or awareness on the defendants' part that the food was harmful or that the plaintiff was likely to sustain serious harm therefrom, the plaintiff's claim sounds more in the nature of a claim of negligence which is not actionable under § 1983. Oliver v. Collins, 904 F.2d 278 (5th Cir. 1990); Thompkins v. Belt, 828 F.2d 298 (5th Cir. 1987). Accordingly, the plaintiff's claim relative to alleged food poisoning on November 26, 2009, is not supported by any competent summary judgment evidence, and the defendants are therefore entitled to judgment relative to this claim.

Turning to the plaintiff's claim asserted against defendant Roundtree, that this defendant failed to properly attend to the plaintiff's medical complaints after the plaintiff reported to prison officials that he was suffering the effects of food poisoning, the law is well-settled that in order for an inmate-plaintiff to prevail on a claim that his constitutional rights have been violated by the provision of improper or inadequate medical care, he must allege and show that appropriate care was denied and that the denial constituted "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Johnson v. Treen, 759 F.2d 1236 (5th Cir. 1985). Whether the plaintiff received the treatment or accommodation which he believes he should have is not the issue. Estelle v. Gamble, supra; Woodall v. Foti, 648 F.2d 268 (5th Cir. 1981). Nor do negligence, neglect, medical malpractice or unsuccessful medical treatment give rise to a § 1983 cause of action. Varnado v. Lynaugh, 920 F.2d 320 (5th Cir. 1991); Johnson

v. Treen, supra.  Rather, the deliberate indifference standard sets a very high bar: the plaintiff must establish that the defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."  Domino v. Texas Dept. of Criminal Justice, 239 F.3d 752 (5th Cir. 2001).  Further, a mere delay in treatment does not constitute an Eighth Amendment violation without both deliberate indifference and a resulting substantial harm.  Mendoza v. Lynaugh, 989 F.2d 191 (5th Cir. 1993).

Upon a review of the evidence in this case, it does not appear that the plaintiff is able to establish a claim of deliberate medical indifference relative to defendant Roundtree.  The plaintiff acknowledges that when he filed a Request for Medical Treatment on November 27, 2009, he was seen by a medical technician on that date.  The medical record generated as a result of that consultation reflects that the plaintiff was administered an immediate dose of Pepto Bismal and was prescribed another medicine, Immodium, to be taken three times daily for two days per orders of defendant Roundtree.  The medical notation also indicates that the plaintiff was advised to seek further medical attention at sick call as needed.  The plaintiff acknowledges that, notwithstanding, he did not submit any further medical request forms relative to complaints arising from the allegedly contaminated food.  Instead, he allegedly sent a letter to defendant Roundtree on November 29, 2009, complaining that the medical consultation which had been promised by the medical technician on November 27, 2009, had not occurred.  Although, according to the plaintiff, defendant Roundtree did not respond to the referenced correspondence, this failure does not establish any liability on the part of defendant Roundtree.  The plaintiff acknowledges that there were hundreds of inmates complaining on November 27, 2009, of symptoms resulting from the allegedly contaminated food.  It appears that, as a result of these numerous complaints, defendant Roundtree implemented procedures designed to facilitate the treatment of the many inmates, specifically providing for inmates to be seen by health care providers at one or more triage units at LSP and providing for certain approved medicines (including Kaeopectate, Pepto, Immodium,

Maalox, Tigan, Reglan, Tylenol and Simethicone) to be administered or provided to the inmates as was done in connection with the plaintiff. Although defendant Roundtree did not apparently personally examine and treat the plaintiff on November 27, 2009, such failure does not establish that the defendant was personally aware of a serious risk of harm faced by the plaintiff which the defendant ignored. And in the absence of any allegation by the plaintiff that he followed proper procedure to request additional medical attention and to thereby bring his complaints to the attention of Dr. Roundtree, there is no legal or factual basis for a finding of liability on the part of this defendant.[4] The mere sending of a letter to Dr. Roundtree on November 29, 2009, which letter was likely neither seen nor read by the defendant, was clearly not sufficient to place the defendant on notice of the plaintiff's complaint or of a serious medical need, particularly in light of the plaintiff's admitted failure to pursue relief through normal health care channels.[5] Accordingly, on the weak and tenuous showing made by the plaintiff, the Court finds that a reasonable jury could not find in favor of the plaintiff in connection with this claim, and the defendant is therefore entitled to summary judgment as a matter of law.

RECOMMENDATION

It is the recommendation of the Magistrate Judge that the plaintiff's Motion for Summary Judgment, rec.doc.no. 83, be denied, and that the defendants' Motion for Summary Judgment, rec.doc.no. 59, be granted, dismissing the plaintiff's claims asserted against the defendants, with

---

[4]       The plaintiff complains that he has been deprived of "vital information" necessary for establishing his claims because the defendants have been allowed to withhold, by filing under seal, certain LSP health care directives relative to the manner in which health care providers respond to medical requests or address claims of food poisoning. Notwithstanding, the Court has reviewed the referenced documentation and finds nothing therein which would alter the Court's conclusion that defendant Roundtree may not be found to have been personally indifferent to the plaintiff's serious medical needs.

[5]       The Court further notes that the plaintiff acknowledges that he suffered only 2½ or 3 days of discomfort as a result of the allegedly contaminated food. See rec.doc.no. 83-2, at p. 14. Thus, by the time of the plaintiff's correspondence to Dr. Roundtree on November 29, 2009, the plaintiff was essentially symptom-free or close thereto. This does not support the plaintiff's claim that he faced a "serious medical need" or was exposed to a "substantial risk of serious harm" which the defendant ignored.

prejudice, and that this action be dismissed.

Signed in Baton Rouge, Louisiana, on August 6, 2012.

_____

**MAGISTRATE JUDGE DOCIA L. DALBY**